Good morning. The first case we're going to hear is the In Re Flonase Antitrust litigation numbers 16-1124 and 16-3019 and we'll hear from the court. My name is Lisa Blatt and I represent GSK and I've reserved four minutes for rebuttal. That will be granted. For two independent reasons, this court should hold that sovereign immunity does not shield Louisiana from a class action settlement that otherwise binds absent class members. First and foremost, states cannot invoke sovereign immunity as sovereign immunity it had because it received actual notice of the class action and failed to opt out. And at a minimum... So I have a question for you. It seems that you and Counsel for Amici have noted that an affirmance would create a dangerous precedent. On this particular point of notice, I just have a couple of preliminary points. If Louisiana had received approved class notice and no half a notice, would we be in the same position that we are in now? Would your argument be the same? Well, our argument would be the same and Louisiana would be the same, but as you know, the district court reserved the question you're asking. But both sides, we are arguing as an initial matter... I know you'd have to resolve the question of fact, but... No, no, no. Before you even get to notice, our position is that you just don't have an issue with sovereign immunity. Now, you always have, with class members, a question of Rule 23 notice. And so if there was a notice violation, that's not a sovereign immunity problem. That's just a problem that the class action is not binding. But the district court held that there was compliance with Rule 23, actual notice went to all identifiable purchasers, and publication notice, and then there was the separate notice that the state received. Now, on the notice question, I think the dangerous precedent is both twofold. The first is that no court, certainly no Supreme Court, has ever held that sovereign immunity extends to states as plaintiffs. And so that is in itself a dangerous precedent because it would open up the question of an all-class action. The Thomas case doesn't make your case any better. No, but it's distinguishable, and it makes to us, and I think to everybody, all the difference in the world, which side of the league the state is on. Now, that case is just not a class action, and the state was nominally a defendant. But every single Supreme Court case has always framed sovereign immunity as something that protects states as defendants. Why shouldn't we view this slightly differently, since the key action that we're looking at here is the motion to enforce the settlement in which the states are responding? Right, so like in any normal civil litigation, the plaintiff does not become the position of defendant if it violates a court order, and the court has continued jurisdiction, and you seek to enforce it. So in the underlying class action, just because you're subject to an enforcement, that doesn't make you a defendant. Every plaintiff then would be But as a fallback position, our position was in the motion to enforce. That's why GSK proceeded under Ex parte Young, and sued the Attorney General in his individual capacity for violating a federal court order. But our primary position is just plaintiffs are plaintiffs, and in any case where you're an absent class member, and if you tried to sue, you're not all of a sudden a defendant. You just violated the court's order in your capacity as someone who was bound by an adverse judgment in your capacity as a plaintiff. Otherwise, there would be no such thing as a plaintiff, actually, because you could always be subject to an enforcement order. You would just never have a plaintiff. Can I roll back just for a second? What you're talking about, I think, sovereign immunity is big, and it can be at least two things that we've recognized. Eleventh Amendment Yeah, I mean, there's form immunity and then liability. Now, there's no But we're talking about Eleventh Amendment immunity in this case, right? Right. I mean, this is a diversity case. Right. And again, I mean, I think that only helps us because the text of the Eleventh Amendment is when suits are filed against the state. And the whole premise, whether it's Eleventh Amendment immunity or any kind of sovereign immunity, is that the king can do no wrong. Let me ask you a question about that, because, I mean, we wouldn't be here if it was absolutely beyond doubt. No, I think you would be here. There's an appeal. Well, you wouldn't be here arguing the case. It was so clear. Anyway, now, what are the bases for immunity as to dignity of the state? How is that affected here in this? I mean, we are hailing the state, even if it is a plaintiff, into federal court. What about the interest of dignity of the sovereign? Well, several responses. I mean, the Supreme Court, in an opinion by Justice Scalia, I think it was the Virginia Office of Protection and Advocacy, says that not every indignity to the state is a violation of sovereign immunity. But more importantly, federal courts have routinely extinguished the claims of states, even over their violent objection. This is something that happens all the time in amnesty and bankruptcy, and it can happen without offending sovereign immunity, precisely because no claim is being made against the state. So, sovereign immunity has never given states the absolute right to control when and where they can pursue their own claims, nor have states ever had absolute control over their form, because if a state sues in state court, the case can be removed to federal court against the state's will, and if the state sues in federal court, it can be transferred to another federal court. Actually, you bring up a good point about removing a state court case where the state is the plaintiff. That's not really before us, is it? It raises another interesting issue. Every court of appeals that has reached the issue has held that it can be removed, and it is because the state is a plaintiff. There's just a cataclysmic difference between a plaintiff and defendant, and that is because, which I was getting to earlier about the king can do no wrong, the whole point of sovereign immunity is to protect the state from having a claim for money damages or injunctive relief against it. And all those principles are not triggered when you're a plaintiff. There's no risk of an adverse judgment, there's no risk of a demand, and you're not being accused of any wrongdoing. But you're involuntarily forcing the state to be a litigant, to be a class member. Well, that's incorrect. There's actually even less control, in all the examples I gave, than in a class action. The state can just opt out if they want to pursue claims. But they have to do something. Sure. They must take the litigation conduct of opting out. Right. And in states and bankruptcy, they're out of luck. They have no choice. There's no opt-out. In the removal context, the transfer context, since the founding, Congress, not states, control where states have to sue citizens of other states and aliens. And so if anything, there's less of an affront to indignity in the class action context. They're an absent class member. And I think that's why the Supreme Court, in that Phillips Petroleum case, said absent class members are just not defendants because they don't face a demand, they don't face a risk of an adverse judgment, and none of the ordinary burdens of litigation are imposed on absent class members. They're just absent. And the state can always opt out. And in fact, one of the amicus griefs, states do opt out. That is not an uncommon occurrence. There are sophisticated litigants, including in class action plaintiffs, and they know how to opt out if they want to. But I do think this would be, as far as we can tell, but for those district court cases, this would be the first court of appeals to ever hold that sovereign immunity is even implicated in a class action case where the state is just an absent class member. And I think that is dangerous because it would potentially upend all existing settlements where states are defendants. So it's improper to look at this as your client seeking, I keep going to the underlying action, right, to your, I understand the underlying action is a class action, but you're seeking to enjoin. The motion to enforce. Right. So the question is, we know from FISC that the 11th Amendment applies in instances of equitable suits against the state. I presume that you would see the tension between FISC on the one hand and Ex parte Young and Hawkins on the other, and that's how you'd resolve it? I mean, Ex parte Young is a fiction, obviously. It's not real. But it is inconceivable that at least the Supreme Court would ever hold that a state, even in the position of a plaintiff, somehow can never be bound by a judgment because it has to be enforceable. A federal court in this case had express, continuing, and exclusive jurisdiction over the class. And if a party is violating a court's order, there's both personal jurisdiction and I think subject matter jurisdiction. And if there was immunity, and again, it would be form immunity, not liability immunity, then we pursue, you know, the Attorney General is the party who filed in the state court, and he's the attorney that can fix the problem, and he's sued in his personal capacity. And I think that's just clear that that's the way you enforce a judgment, and I think that that was done over an abundance of caution because, you know, all the, think about it this way. If there was consent, there's all different ways of looking at this. There's either, you know, waiver, consent, or no immunity. If there was consent, we could have sued the state. I mean, the state would have consented to the court's jurisdiction and there wouldn't even be issues. I mean, there's consent. The state is treated as binding by an agreement that says there's exclusive and continued jurisdiction. State wasn't sued, the Attorney General wasn't sued, and his personal capacity, personal capacity. I'll also say one of the issues about, there's a lot of questions about how he was served, and that kind of thing is, you know, those kind of services, defects in services were clearly waived because under the federal rules, those have to be raised at the earliest opportunity. If I could just say one more thing about the notice issue because, you know, our primary position and our threshold position, which you never get to notice, is that sovereign immunity just does not apply at the gate. Now, on notice, you know, there are two questions on the notice. One is sort of the state's position is, even if we got actual notice, you have to make us opt in. And we think that that kind of proposition is incredibly ridiculous because you could just never have class action settlements if you had to negotiate 57-side agreements. But it would be a real issue, a difficulty, difficult issue. Yes, and so on the actual notice issue, let me just be really clear because the state's about to get up here. The Attorney General, sorry, the Attorney General doesn't dispute they got a notice that had the settlement agreement. He doesn't dispute that he read the notice. That notice in the settlement agreement said in plain English that states are absent class members and have a duty to opt out. And nothing about the fact that the cover letter said, you know, the cover letter didn't say anything, and nothing about the legislative history that says you need to do this with an eye to protect your citizens. It doesn't disable you from understanding the plain meaning of the words you indisputably read. It said right there. Individuals get these things, right? And they're expected to understand them. Consumers are expected to understand them. They're not. I mean, this is the Attorney General who, you know, turned around and filed a class action shortly after this. He obviously knew what an indirect purchaser was. And remember, their agent got notice. The class action notice went to their agent, Humana, under sort of the notice plan of their agent. And their agent even made a claim. So I know the rebuttal, but we also have the fallback position. And, you know, I would love to talk about it. We just had that whole thing on the, you just argued about. We have briefed it as well, so. Okay. Thank you. Thank you. Thank you. Good morning, Your Honors. Good morning. My name is John Alden Mead. I'm here on behalf of the state of Louisiana. I'm privileged to be here today. Welcome to Pennsylvania. Thank you. It's good to be in the city of brotherly love. And, as you know, my first task is to I hope so, too. Thank you, Your Honor. As you know, my first task, of course, is to contest the jurisdiction of this court, as well as the district court properly recognized that it, too, did not have jurisdiction over the state of Louisiana. The state is a sovereign. And this is because of the 11th Amendment. Yes. And so to that point, there's a lot of questions out of years that I wrote down. I'm going to try to answer them. Just throw out my own outline. The 11th Amendment is a recognition of and a manifestation of sovereign immunity, but it does not define the outer limits of sovereign immunity. The question was asked whether there were three Supreme Court cases that recognize that sovereign immunity is broader than the 11th Amendment. They're all cited in our brief. It's the Ayers case, Federal Maritime Commission v. South Carolina Port Authority, and Corey v. White. Actually, I'm going to beg your pardon and interrupt. I want to get to what your adversary brought up. So here's what I'd like you to respond to. She's made her point fairly simply and straightforwardly. You're a plaintiff, and there was actual notice, and that's really the beginning and end of it. I presume your retort is, no, they're seeking an equitable remedy. The 11th Amendment should apply, and Ex parte Young doesn't foreclose the application of the 11th Amendment because of FISC, and then you'd go on and probably talk about college savings and the requirement of some affirmative act on the state's part and call it a day. That's supposition on my part. I want to make sure that if that is your position, if he's articulated and it's not your position, then tell me what your response to their principal arguments are. Thank you, Your Honor. If that was well done, we could maybe switch places. So first of all, if sovereign immunity is broader than just the 11th Amendment, this is how you get to the point. It's not just an issue of whether the state is a plaintiff. Now, obviously, if the state is a plaintiff, 95% of the time they'll be in the form of their choice, and they will have taken an affirmative litigation conduct to be wherever they are. But it misses this final category of what happens when the state is an involuntary plaintiff. And so sovereign immunity goes beyond just whether the state is a defendant. It involves whether the sovereign has, because immunity is its own to waive. It is not for the federal government to take or for private parties to get together and decide, hey, we're just going to waive the state's immunity. But if you have notice, how are you involuntary? Excuse me? If you have notice, how are you involuntary? Because if you have notice, then you can opt out. Sure. Well, okay, so notice, there's two types of notice here we're talking about. When you say opt out, you're referring to Rule 23. Rule 23 doesn't even mention or seek to abrogate, nor could it, sovereign immunity. Rule 23 is a federal rule. It doesn't create jurisdiction where otherwise it was not. And it is undisputed that the claims administrator in this case has said, Louisiana was not a class number, was not, definitively. That's why they weren't identified as one. That's why they didn't get a notice as one. So we're kind of counting the number of angels that can dance in front of a pen here. Because the only thing Louisiana got instead was a CAFA notice. Now, mind you, that a CAFA notice is sent to the United States Attorney General with a CC to the Attorney Generals of the 50 states. And all the legislative history as properly recognized by the district court and the language of the statute itself says that the purpose of the CAFA statute is for the state to see whether it's citizens. Remember, the state's not a citizen of itself. Whether the citizens are being adequately protected. That's why the notice says this is how many people, how many of your citizens we think are in this. So I would say it is disputed whether the Attorney General read it and whether he didn't file this in his personal capacity. I found that a bit jarring. The state of Louisiana is the plaintiff and the Attorney General is the lawyer. The CAFA notice can't be shoehorned into Rule 23. And even if it could, Rule 23 doesn't create jurisdiction or seek to waive sovereign immunity. It is not the federal government's nor the private party's prerogative to waive a sovereign's immunity. It doesn't work that way. I said this at the district court. You might as well wrap up the claims of South America and France while you're at it. We are a sovereign. Well, your adversary points out, I guess relying on the Hood case, what about bankruptcy? You may be a creditor. Either you come or you've lost your rights. So part of the dual-sovereignty system in both bankruptcy and adamantia is those are exclusively federal subject matter jurisdictions. You can't get your rights resolved other than in the federal system. So that bargain has already been struck. If you want to assert or have any of your adamantia or bankruptcy claims and patents, I don't know if the state would ever own a patent, but there are a couple of areas of exclusively federal jurisdiction. So anything stemming from those cases doesn't apply here because I think it's important to note that after the close of briefing, after the decision came out, we won remand. The federal court in the Middle District of Louisiana remanded this whole action back to state courts saying there are no federal questions here. So this case is going on in Louisiana no matter what. And even GSK concedes that at most there's a hypothetical chance that maybe some of our claims were in the class. Now, that's why I found this whole thing very interesting because we were not a party to any of this, and somehow GSK, who was a party to both settlement agreements, tried to make it our burden to tell them what it was about. Can I interrupt you just for a question that popped into my mind when you said that? Now, Humana did file a claim, apparently. Not in the class action settlement matter, and that is an excellent point. And I'm glad you got to it because it's a critical distinction here. We actually acknowledged in the opening brief of GSK at 13 and in the joint appendix, I think that's 297 in the whereas clause, there is a separate settlement agreement, the one that Humana is involved in as a settling help. It was filed in the state court. That settlement agreement isn't even the one that GSK moved under. So even if everything they say about Humana is true, it's not the contract that they've moved to enforce with, nor could they, because that contract is a settlement agreement in Pennsylvania State Court in Philadelphia. And that would be a whole new ball of wax if they tried to get the state court here to enjoin the state of Louisiana. The reason I ask the question is, maybe it's related, because there are certain claims that you have in the Louisiana action that are not covered by the class action, as I understand it. More than 90%. It turns out none of them are because we know from Russ consulting the claims administrator that Louisiana had no claims, none in the class. There is this separate contract, a settlement agreement in Philadelphia State Court, where it appears, unbeknownst to us, this is all brand new, and I'm surprised that GSK, if we get to the Rule 60 thing, thought it was our obligation to ferret this thing out when they were a party to it. We had no idea. But that is a totally separate agreement. It's got nothing to do with why we're here today. Maybe you can address, your adversary points out, hey, if all 50 states can not be part of a class action settlement and say nothing, that's going to destroy or at least really put a bad hit on the class action system in the country. Sure. How do you respond to that? It denies their current practice. The state of Louisiana and GSK have settled repeatedly. We have cited these in our brief in the Avandia case. They had a class action settlement in Avandia, settled separately with the state of Louisiana. We also had a case covering none of them. So every one of these cases they're going to do 50 separate settlements? If they want to. And, in fact, there's several pending right now where the state attorneys general often form multi-state groups. There's a huge one involving a case provisional. It's not GSK. But 48 states out of the 50 reached an agreement in conjunction with CEPHON, which is now TEVA. No big deal. Well, I thought their point was slightly different. Sure, it is technically possible that everybody could opt out, and that would result in 50 separate agreements. But I thought their point was what's disastrous to the system is not that states could opt out. It's that states could receive notice and then take no action, essentially sit on the sidelines, see how the settlement went, and then proceed with a state action, essentially a parallel state action. I thought that was the issue. Well, part of it is that a state of sovereign is on a higher footing than private litigants. I mean, the Federal Maritime Commission goes on and on about that. We're not on an equal footing with private litigants. But mind you, as the classification procedure has moved further and further and further down, after discovery used to be early, it's already the case for private litigants that they can wait and see. So that's already happening with respect to non-sovereigns and these classes that have thousands and thousands of people in them, and maybe even millions. It depends on the drug, if it's a consumer class. So one, that's already happening by virtue of the class procedure being moved further out. And two, that's happening with respect to private litigants who are not on the same footing or not sovereigns as is the state. So I think what we really need, and I think many defendants actually recognize, is that global peace is still possible. But if you want to resolve the claims of a state, pick up the phone. Give the Attorney General a call. Say, hey, look, we know you guys are sovereigns. We know Rule 23 doesn't by itself waive your sovereign immunity. We know that you have to take these affirmative steps. It has to be equivocal. Sorry, unequivocal. We know this, so what do you say we get together and settle this? And that's exactly what the Teva defendants did in the provisional case. It was a $1.2 billion settlement. It was a big deal. They called up all the attorneys general and said, who wants to get in on this settlement? We'd like to tie everybody up. It happens. The fact that it's not the most administratively convenient is beside the point. The state's sovereignty demands it. If College Savings Bank controls here with regard to what the state has to do as to waiver, in that scenario, how would Louisiana prevail here? In College Savings Bank, it's interesting, they found no waiver there, even though the conduct of the state far exceeded what Louisiana has done. Even GSK has acknowledged that what Louisiana did was nothing. It really did nothing. So in College Savings Bank, there was the advertising through interstate commerce, and Congress had actually passed, forget whether it was laws or whether it was just regulation, but putting the state on notice that the federal government intended to have a say on what they were doing. So the state was on notice in that sense, and it was doing affirmative conduct in terms of commerce across state lines, and there was no waiver because, again, the principle is that sovereign immunity is the sovereign's to waive. It is not the federal government's to take, and it is not the prerogative of private parties half a country away to get together in a private agreement and say, you know what, we're going to waive it for them. And what's doubly offensive here is that they also sought to waive our sovereign immunity with respect to subsequent enforcement proceedings, which can't be done. Now, if the release they want is very much against the state itself, and the reason why I believe that they didn't just file the motion against the state is because that put them right into the Cory B. White situation. You just can't do it. So they have to engage in this sleight of hand, this kind of ledger demand, where they say, well, we're going to file a motion against the Attorney General. It's like, well, hold on. Let's not waive. This court didn't reach it because she didn't need to, but we raised all these objections at the trial court level. You can't rope in the Attorney General by motion and pretend that he's the party and not the state and then say, oh, well, we just sidestepped it. And even if you do get to an ex parte Young situation, ex parte Young involved a violation of federal law. Because of our remand here, we know there's no issues of federal law here. So I still don't have 30 seconds. Presumably the issue of federal law is the settlement agreement itself, right? The enforcement of the settlement agreement would be. Right, but that's essentially bootstrapping, right? Like if the jurisdiction didn't exist to begin with, then you don't later get it just to enforce something you never had. So it's a circular argument if you look at it that way. So I'm interested in one other point, and that is you don't spend any time, and forgive me if I've missed it, but you don't spend any time that I can discern on arguing that you're really a respondent and that the focal point here is the enforcement of the settlement agreement. Am I impugning too much to that argument? Well, it's two points. They're separate points, but they get you to the same place. We are a respondent. They have sought injunctive relief against the Attorney General. That makes us a respondent. So the 11th Amendment would apply because you're seeking, and we cite cases in our briefs that go right to that point, that it doesn't matter whether it's a monetary judgment or injunction. They have sought relief against us. We are very much the defendant in this posture, and they're trying to elevate form over substance there. Separately, because sovereign immunity is broader than the 11th Amendment, and I really do need to cite it because I know that time is out, but I want to bring it to your attention. It's the case Hartley Company v. J.F. Acquisition, LLC. It's 2017, Westlaw 1628529 from the Southern District of Ohio. It was decided on May 1, 2017. So it's obviously very recent. Citing Thomas holds that you can't join a state as an involuntary plaintiff. So we think it's very well covered there. I know I'm out of time. On the Rule 60 aspect, I would just refer you to that section of our brief, which is page 33. It lays out the timeline. GSK knew before they even filed their motion. They were appraised several more times before their last brief, before the hearing. All of this stuff was theirs to find out. They served no discovery, no subpoenas, no nothing. All of which, that's what the district court found, that there was inexcusable delay. But mind you, again, to answer your questions, this related to a separate agreement about which GSK has not moved. All of that is related to a separate state court settlement that they have not invoked. Nor could they. So it's not even properly before the court, but it's by definition irrelevant here. Thank you. Thank you. Thank you. And may it please the court, if I could just start with the enforcement. I mean, this court could hold, okay, the district court has no authority to enjoin. The district court can just provide a declaratory judgment that the state is bound. But it seems to me that's form over substance. District courts can't function when they have continuing jurisdiction if they don't have jurisdiction over the plaintiffs. Will they be in a position, as he pointed out, as a responding party? So not so much the plaintiff, but as a responding party? You're a responding party because you're subject to the enforcement of a court order that was entered against you as a plaintiff. But Ex Parte Young is not a sleight of hand. It's a Supreme Court case that says that's how you enforce federal law. If the state is bound, then it's a federal consent decree. The court retained continuing jurisdiction. It functions as a consent decree. The state is bound. So the only gap you're talking about is a separate lawsuit filed against the attorney general as opposed to a motion to enforce. And that seems really silly because he's no stranger to the lawsuit, and it would be terrible. We could just slap a complaint on and start over. So I do think that it would be quite a bizarre holding to say that Ex Parte Young is not usable in this context, even if there is sovereign immunity in the enforcement position. Could you respond to your adversary's point that the claim administrator admitted there was no notice provided to? I have notes. What is he talking about? I have no idea what he was saying. I'm like, where was the cite to that? I don't know. That was weird. He said something about the claim administrator said he was never a class member. I mean, that was just strange. What we know is that the claim administrator did a proprietary database of 40,000 private claim administrators all over the country. And 50 states, just like the federal government, have government health plans under private contractors like Blue Cross and Humana, and that's who got the notice. So I don't know what he's talking about, but I'm going to read some of his representations. This happens to be him. There are no claims belonging to the state of Louisiana that were resolved by this litigation, nor obviously, he threw in the word obviously, were any claim forms submitted on behalf of the state of Louisiana. Humana is their agent. I mean, he doesn't dispute that. Now, he talked about something. It's true. It's the settling. It's a separate settlement agreement for certain private carriers, but it's still the EDPA. It's the Eastern District Class Action. You had to be a class member. It's just a different, they got different amounts of money. It's a federal, it's the same thing. So, I mean, in our view, parties are entitled to assume that government attorneys accurately investigate, you know, the factual basis for the representations and that they would have asked their agent. Even the notice to the state said, you know, if you have any third-party administration under a government plan is within the class. But if you were going to hold against us, I think at a minimum you would ask that to be remanded, given the state made four representations that were, for better or worse, misleading. You could ask the district court to set that out before you hold that, you know, states can't be absent class members. But I wanted to get to your point on, I think you said College Savings Bank. I think the same two reasons that the Supreme Court in Lapidus held that you don't use the express consent requirement, you can have an implicit waiver, do apply, whether it's affirmative litigation conduct or silence in litigation, but in the face of a duty to act, which is Rule 23. So we have a case named Antonelli. Are you familiar with that? No, but if you give me, maybe it will. I'm going to hum a few bars for you. Okay. So Antonelli is a 2005 case. It's written by the late Rudy Aldisert. And in that case we relied on sovereign immunity jurisprudence to decide whether a consent decree waived a state's claim, the consent decree was involved there. So, you know, here we decide whether a consent decree waived the state's, you know, in that case, sovereign immunity with regard to a specific claim. So the question I had is when you look at Antonelli and College Savings Bank and both are requiring some kind of action, there's language of clear waiver or explicit waiver, why wouldn't that apply here? Well, remember, Lapidus takes into account, and I think Judge Shigeru's wrote a different decision on this, but we're talking about form immunity. And Lapidus left open that there's always the immunity on any underlying liability. So in other words, just because the court has subject matter jurisdiction or personal jurisdiction, whatever you think about immunity, that doesn't mean if a claim for liability, in that case I don't remember whether it was a civil rights case. In your case, I forgot what it was. I think it may be an ADA claim. The state could still assert sovereign immunity against the underlying liability. And so what we're talking about here is really the form immunity. There's no liability being asserted against the state in terms of, you know, the state was a plaintiff. So this is a question of can you force the king to take money at a time and place when he didn't choose. Now, I didn't hear a good response on the bankruptcy context. The bankruptcy context, the key there is you can't opt out of timing. And the reason the court, and I think it's the Hood case, said it's not because it's exclusive jurisdiction. It's because there's no claim being made against you. In bankruptcy, it's just a question of whether you're going to get money, and same way with admiralty. And the fact that it's in REM, to be sure, is part of it. But in REM means, you know, the race, the jurisdiction over the property, just means no claim is being made against the state. And I wanted to, can I make one question, one more thing on? Very briefly. Okay. He said that they dispute that they read the notice. And I just thought that was bizarre because I thought the attorney general's whole argument was we read this, but we read it to protect our citizens. So the notion the attorney general is claiming he didn't read a document that he thought was to protect his citizens is a little bit weird. Thank you, counsel. We'll take the case under advisement. Could counsel order a transcript and split the cost? Okay. We'll take the case under advisement. And if counsel are readable, we thank you for your excellent briefing and argument in this really interesting case. We'd like to greet you more personally at sidebar, and we'll do so right now. Thanks.